CLARENCE BERNARD ROBINSON v. CITY OF WINSTON-SALEM; J. C. HASSELL; AND D. G. BURTON

No. 7621SC962

(Filed 16 November 1977)

1. **False Imprisonment § 1— arrest of wrong person under warrant—liability of officer**

    A police officer who arrests the wrong person under a valid arrest warrant because of a mistake in the identity of the person arrested will be liable for false imprisonment only when the officer failed to use reasonable diligence to determine that the party arrested was actually the person named in the warrant.

2. **False Imprisonment § 3— officer's arrest of wrong person—good faith—punitive damages**

   While the good faith of an arresting officer, in the sense of absence of malice, does not by itself relieve the officer from liability for compensatory damages for false imprisonment because good faith implies due diligence and the failure to exercise ordinary care is inconsistent with good faith, a showing of malice or of conduct demonstrating reckless disregard of the rights of others is required to support an award of punitive damages for such false imprisonment.

3. **False Imprisonment § 2— officers' arrest of wrong person under warrant—reasonable diligence—genuine issue of material fact**

   In this action against two police officers for false arrest, there was a genuine issue of material fact as to whether defendants exercised due care in determining whether plaintiff was the person named in the warrant, and summary judgment was improperly entered for defendants, where the arrest warrant directed defendants to arrest "Bernard Jackson" for the crime of selling heroin; plaintiff's name is Clarence Bernard Robinson and nothing in the record suggests that he was known by any other name; even if defendants can show that a confidential informant who told one defendant that "Bernard Jackson" lived at plaintiff's address was reliable, such defendant's affidavit shows that when the officers went to the address they were informed that Clarence Bernard Robinson was the only black male who lived there; defendants' affidavits asserted that an SBI agent who purchased the heroin in question identified a photograph of plaintiff and later identified plaintiff himself as the person from whom the purchase was made, but the SBI agent's affidavit was to the effect that he never positively identified either the photograph or the plaintiff as the heroin seller; and it was uncontradicted that even after defendants knew that they had arrested the wrong person, plaintiff was still held in jail overnight before he was allowed to go free.

APPEAL by plaintiff from *Collier, Judge.* Judgment entered 25 October 1976 in Superior Court, Forsyth County. Heard in the Court of Appeals 23 August 1977.

Plaintiff instituted this civil action against the defendant city and two of its police officers to recover damages on claims for malicious prosecution, false imprisonment, and abuse of process arising out of the arrest and jailing of the plaintiff on 10 December 1975. Summary judgment was granted in favor of all defendants on the grounds that there was no genuine issue as to any material fact and that defendants were entitled to judgment as a matter of law.

Plaintiff conceded upon this appeal that the entry of summary judgment in favor of the defendant, City of Winston-Salem, was proper because of its governmental immunity. Plaintiff fur-

ther conceded that the entry of summary judgment in favor of the two individual defendants on the claims for malicious prosecution and abuse of process was proper. Therefore, the sole issue raised on this appeal concerns the trial court's ruling granting summary judgment against the plaintiff on his claim for damages for false imprisonment against the two police officers, the defendants Hassell and Burton.

The pleadings and affidavits filed in support of the motion for summary judgment show the following:

On 9 December 1975 the Forsyth County Grand Jury returned as a true bill an indictment which charged that on 6 October 1975 one Bernard Jackson had feloniously sold heroin to W. M. Riggsbee. Based on the indictment, on 9 December 1975 an order for arrest of Bernard Jackson was issued by a magistrate pursuant to G.S. 15A-203(b)(1), and this order was placed in the hands of the police for service. At the time the sale referred to in the indictment was made, Riggsbee was working as an undercover agent for the State Bureau of Investigation. Earlier in December 1975, prior to return of the indictment, Officer Burton, one of the individual defendants, had been advised through a confidential informant "that an individual with a description similar to that of Clarence B. Robinson was living at 1121 East 21st Street, that this individual was named 'Bernard Jackson,' and that he was believed to be somehow involved with illegal drugs." On 10 December 1975 Officer Burton and other officers went to that address, where they talked with an occupant who advised that the only black male who lived there was Clarence Bernard Robinson. Following this a photograph of clarence Bernard Robinson was shown to the SBI agent, who stated that the person in the photograph was the person who had sold him drugs illegally on 6 October 1975 using the name of "Bernard" or "Denard," and that the person in the picture was the same person who had been indicted by the Grand Jury. With this information, Officer Hassell, accompanied by another officer, located the plaintiff, Clarence Bernard Robinson, and placed him under arrest. They took the plaintiff to the Clerk's office, where they contacted Officer Burton and the SBI agent and requested that they come in order to verify the prior photographic identification of the plaintiff, Robinson, as the Bernard Jackson referred to in the bill of indictment. Upon arrival of Officer Burton and the SBI agent at the

Clerk's office, the Agent stated that Mr. Robinson was the one who had sold him the drugs illegally and was the one the Grand Jury indicted for that offense. With this verification of the identity of Clarence Bernard Robinson as the person to be arrested, the officers proceeded to process him and take him to jail. Subsequently, the officers were advised by the sister of Clarence Bernard Robinson that he was not the same person as Bernard Jackson, that she knew Bernard Jackson, and that she would help them find Bernard Jackson. With this information, Officer Burton discussed the matter with the SBI agent, who stated that it was possible that Clarence Bernard Robinson and Bernard Jackson were not one and the same. The District Attorney, upon being advised of this, then arranged for the release of Mr. Robinson. Prior to the events above described, neither Officer Burton nor Officer Hassell had known or had ever heard of Clarence Bernard Robinson, and neither had any reason to want to cause him any harm.

In opposition to the defendants' motion for summary judgment, plaintiff filed his own affidavit and the affidavit of SBI Agent Riggsbee. In his affidavit plaintiff stated in substance that when the two officers came to his place of employment on the morning of 10 December 1975, he told them he was not Bernard Jackson, but despite this they handcuffed him and took him to the police station; that at the police station another policeman, whose name plaintiff did not know, also told them that plaintiff was not Bernard Jackson; that plaintiff continued to protest that the officers had arrested the wrong person, but they ignored his protests and appeared to be primarily interested in being photographed by the television cameras as they took plaintiff across the street from the police station to the jail; and that plaintiff was kept in jail overnight before he was informed by the officers that they had the wrong person and he could go.

SBI Agent Riggsbee stated in his affidavit that on 6 October 1975, while working in an undercover capacity, he purchased three bags of heroin from a black male known as "Denard" on Liberty Street in Winston-Salem; that this person remained unidentified to him, and on 4 December 1975 he told Officer Burton that he had been unable to identify Denard for such a long period that he was unsure that a positive identification could be made; that when Officer Burton showed him a photograph on the morning of 10 December 1975, he told Burton, "I can only say that

this might or might not be the suspect; both the suspect and the man in the picture have light skin"; that at approximately 10:00 a.m. on the same morning of 10 December 1975 he was in the Forsyth County Clerk's Office when the officers brought in Robinson, and at that time he took Burton aside and told him he could not positively identify the suspect; and that later the same morning he again told Burton that he could not make a positive identification.

From the order granting summary judgment in favor of all defendants, plaintiff appeals, contending that the court erred insofar as it granted summary judgment dismissing plaintiff's action for false imprisonment against the individual defendants.

*Wilson and Morrow by Harold R. Wilson and John F. Morrow for plaintiff appellant.*

*Ronald G. Seeber, City Attorney and Womble, Carlyle, Sandridge and Rice by Roddey M. Ligon, Jr., for defendant appellees, City of Winston-Salem and D. G. Burton.*

*Hall, Booker, Scales and Cleland by George M. Cleland for defendant appellee, J. C. Hassell.*

PARKER, Judge.

This appeal presents the following question: What is the proper test for determining the civil liability of a Police Officer for false imprisonment when the officer, acting under a valid arrest warrant, arrests the wrong person because of a mistake in the identity of the person arrested? So far as research of counsel and our own research reveals, this is a question of first impression in this State.

In *Melton v. Rickman*, 225 N.C. 700, 703, 36 S.E. 2d 276, 277-78 (1945), Barnhill, J. (later C.J.), speaking for our Supreme Court, said:

A cause of action for false arrest or false imprisonment is based upon the deprivation of one's liberty without legal process. It may arise when the arrest or detention is without warrant, *Allen v. Greenlee*, 13 N.C., 370; *S. v. DeHerrodora*, 192 N.C., 749, 136 S.E., 6; *Cook v. Hospital*, 168 N.C., 250, 84 S.E., 352; *Hoffman v. Hospital*, 213 N.C., 669, 197 S.E., 161, or the warrant charges no criminal offense, *Rhodes v. Collins*,

198 N.C., 23, 150 S.E., 492, or the warrant is void, *or the person arrested is not the person named in the warrant.* 4 Am. Jur., 81, sec. 132. *All that must be shown is the deprivation of one's liberty without legal process.* (Emphasis added.)

Taken literally, this language would appear to impose strict liability upon the officer for false arrest in any case where the person arrested is not the person named in the warrant, no matter what care the officer may have exercised to avoid the mistake. The case in which this language appears, however, involved an action for abuse of criminal process, and the question whether in an action for false arrest or false imprisonment the officer who arrests the wrong person is strictly liable or is liable only in the absence of reasonable diligence was not presented for decision.

Those jurisdictions which have considered the question now presented have adopted two approaches to its solution. Some have adopted the rule of strict liability, that an officer in executing a warrant assumes the risk that the person arrested may be the wrong one. Under this rule, if the officer arrests the wrong person he will be liable for false imprisonment no matter the degree of care he may have exercised, at least absent misleading conduct on the part of the person arrested. Other jurisdictions have adopted the view that the *good faith* of the arresting officer and his *reasonable care* in ascertaining the identity of the person arrested with the one named in the warrant should be the proper test of his liability. Under this view, the officer will not be liable for false imprisonment for mistaking the identity of the person named in a warrant if he exercises reasonable diligence to ascertain the identity correctly before he serves the warrant. *See* 32 Am. Jur. 2d, False Imprisonment, § 71, p. 132; Annot., 127 A.L.R. 1057 (1940), supplemented in Annot., 10 A.L.R. 2d 750 (1950).

[1] The strict rule which requires the officer to assume the risk of mistake puts him in an unenviable dilemma: failure to serve the warrant may amount to dereliction of duty, but no amount of caution protects him from liability if he arrests the wrong person. In our opinion this imposes an unreasonable burden upon the officer who is both careful and diligent. Accordingly, we adopt the rule, which appears to be the one followed by the majority of jurisdctions that have considered the matter, and hold that liability for false imprisonment will be imposed only when the ar-

resting officer has failed to use reasonable diligence to determine that the party arrested was actually the person described in the warrant. For examples of cases following this rule, see *Miller v. Fano*, 134 Cal. 103, 66 P. 183 (1901); *Wallner v. Fidelity & Deposit Co.*, 253 Wis. 66, 33 N.W. 2d 215 (1948); State *ex rel. Anderson v. Evatt*, 63 Tenn. App. 322, 471 S.W. 2d 949 (1971).

[2]  Under the rule which we adopt, the good faith of the arresting officer, in the sense of absence of malice, does not by itself relieve the officer from liability for compensatory damages. This is so because in this context good faith implies due diligence, and the "failure to exercise ordinary care . . . is inconsistent with good faith." *Blocker v. Clark*, 126 Ga. 484, 490, 54 S.E. 1022, 1024 (1906). Although lack of actual malice is no defense to a claim for compensatory damages, a showing of malice or of conduct demonstrating reckless disregard of the rights of others is required to support an award of punitive damages. *See Alexander v. Lindsey*, 230 N.C. 663, 55 S.E. 2d 470 (1949); *Rhodes v. Collins*, 198 N.C. 23, 150 S.E. 492 (1929).

[3]  Applying the rule which we have adopted to the facts shown on the present record, we first note that the trial court's ruling granting summary judgment in favor of the defendants can be sustained only if the record, viewed in the light most favorable to the plaintiff as the party opposing the motion, discloses no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. G.S. 1A-1, Rule 56; *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972); *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). We find that genuine issues as to material facts bearing on the question whether the defendant police officers exercised due care are raised on the present record. The officers acted under authority of an order for arrest which directed them to arrest Bernard Jackson. Plaintiff's name is Clarence Bernard Robinson, and nothing in the record suggests that he has ever been known by any other name. Even if Officer Burton can show that the confidential informant who told him that Bernard Jackson lived at plaintiff's address was reliable, a fact which was not asserted in any of defendants' affidavits, Burton's affidavit shows that when the officers went to the address they were informed that Clarence Bernard Robinson was the only black male who lived there. Although defendants' affidavits assert that the SBI agent who had made the drug purchase identified a

photograph of the plaintiff and later identified the plaintiff himself as the person from whom the purchase was made, Agent Riggsbee's affidavit sharply contradicts these assertions and is to the effect that Riggsbee never positively identified either the photograph or the plaintiff as the person from whom he purchased heroin. Finally, it is uncontradicted that even after the officers knew that they had arrested the wrong person, plaintiff was still held in jail overnight before he was allowed to go free. On this record, genuine issues of material facts were clearly raised bearing on the question whether each of the individual defendants exercised due care to avoid the mistake which was made. Accordingly, it was error to grant summary judgment dismissing plaintiff's claim for false imprisonment against the two individual defendants.

The result is:

The summary judgment dismissing all of plaintiff's claims against the defendant City of Winston-Salem is affirmed;

The summary judgment dismissing plaintiff's claims for malicious prosecution and abuse of process against the two individual defendants is affirmed;

The summary judgment dismissing plaintiff's claim for false imprisonment against the two individual defendants is reversed and this cause is remanded to the Superior Court in Forsyth County for further proceedings in connection with that claim.

Affirmed in part; reversed in part; and remanded.

Judges MARTIN and ARNOLD concur.