Tommy SMITH *v.* Wallace C. BRT

04-1363                                                211 S.W.3d 485

Supreme Court of Arkansas
Opinion delivered June 30, 2005

*Doug Norwood* and *Susan Lusby*, for appellant.

*Nga Ostoja-Starzewski* and *Daniel Wright*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Tommy Smith, formerly the chief of police for the City of Elkins, sued the City's mayor, Appellee Wallace Brt, alleging a violation of the Arkansas Civil Rights Act of 1993 for retaliatory discharge in violation of his right to freedom of speech under the Arkansas Constitution. Smith now appeals from the circuit court's grant of summary judgment in favor of Mayor Brt. The crux of Smith's argument on appeal is that the circuit court misapplied the applicable law in determining that "there is no genuine issue of material fact in dispute." We affirm the circuit court's dismissal of this case.

Smith attended a meeting of the Elkins City Council on April 10, 2003. At that time, he was Chief of Police for the City of Elkins. During the meeting, Smith decided to inquire about the proposed enforcement of a building moratorium previously imposed by the city council. His questions at the meeting specifically related to potential litigation costs the City might incur if Leonard Gabbard, the developer of a local subdivision, decided to sue the City upon its enforcement of the building moratorium.

When Smith took the floor to speak, not only as the police chief but also as a private citizen, he prefaced his comments regarding the building moratorium by acknowledging that it might be against his self-interest to speak: "I work for the city, and I may be shooting myself in the foot." According to Smith, one of the council members, Lacy Randall, responded by stating, "[W]ell, Barney [Fife], if you keep your bullet in your pocket, you wouldn't be shooting yourself through the foot." Smith became so upset as a result of this remark that he left the meeting and went outside. Shortly before the meeting adjourned, Smith went back into the building to speak with the City's mayor, Appellee Wallace Brt. Then, when the meeting was over, Smith proceeded to tell the mayor that something needed to be done about Randall's remarks. Smith also made a comment about wanting to "hit the fat SOB [Randall] in the nose." Later that evening, Smith called Mayor Brt and apologized for getting so angry about Randall's comments because "it wasn't too professional of me doing that."

Kevin Caler, a City employee responsible for the maintenance of the City's parks, streets, and water and sewer systems, was also at the council meeting. After the meeting, he reported to the mayor that he smelled the odor of alcohol on Smith's breath that night.[1] Four days later, on April 14, 2003, Mayor Brt issued a written reprimand in which he reprimanded Smith for drinking at a public meeting and for his unprofessional comments during and after the meeting. A few days later, the mayor discovered that police reports on several vehicle break-ins and thefts in a local neighborhood had not been placed in the police department's files. Upon learning about the missing or incomplete reports, Mayor Brt notified Smith by a letter dated April 25, 2003, that he was discharged as Chief of Police for the City of Elkins, effective April 28, 2003. That letter, however, did not set forth the reasons for Smith's termination as police chief.

In deposition testimony, Smith disputed Mayor Brt's version of the circumstances surrounding the local neighborhood break-ins and the missing reports. He stated that the task of completing the reports had been assigned to a subordinate officer. Moreover, Smith claimed that he was unaware of any problems with his department's case files until Mayor Brt testified at his deposition about the missing or incomplete reports.

---

[1] Smith denied drinking any alcohol that day.

On July 23, 2003, Smith sued Mayor Brt in his official capacity and his individual capacity. In the complaint, Smith contended that Mayor Brt fired him in direct retaliation for the comments Smith made about the City's building moratorium at the council meeting on April 10, 2003. He further asserted that the mayor's termination of his employment as police chief had "no other lawful purpose." Finally, he alleged that the mayor made public statements that Smith was terminated for drinking on the job, which Smith denounced as being "a ridiculous lie." In sum, Smith submitted that Mayor Brt's actions were in violation of the Arkansas Civil Rights Act of 1993, codified at Ark. Code Ann. §§ 16-123-101 though 108 (Supp. 2003), and the freedom of speech provision contained in the Arkansas Constitution, Ark. Const. art. 2, § 6. As a result of being deprived of his constitutional rights, Smith alleged that he suffered loss of employment, mental anguish, and embarrassment. He sought both compensatory and punitive damages, court costs and attorney's fees. Mayor Brt responded by filing an answer that denied Smith's claims and asserted, among other things, that he was entitled to all immunities available under the law, including but not limited to absolute and qualified immunity.

Approximately one year later, Mayor Brt filed a motion for summary judgment, arguing that there were no genuine issues of material fact. His brief in support of the motion set out three reasons why the circuit court should grant summary judgment: (1) Smith's statements did not constitute a matter of public concern, (2) Smith would have been terminated in the absence of his statement, and (3) Mayor Brt is entitled to qualified immunity. Smith responded, contending that there were disputes as to the material facts and as to whether the remarks Smith made during and after the council meeting constitute an abuse of the freedom to speak and publish guaranteed by the Arkansas Constitution. The circuit court granted Mayor Brt's motion for summary judgment. In a supplemental opinion letter, the court concluded that "there [was] no genuine issue of material fact in dispute in that the plaintiff has failed to plead or offer any evidence in opposition to the Motion for Summary Judgment that he had an established right of employment." Moreover, the court *sua sponte* noted that because Arkansas is an at-will employment state, and because Smith failed to prove that he was discharged in violation of an exception to at-will employment, he had no cause of action against Mayor Brt. Lastly, with regard to Smith's claim under the Arkansas Civil Rights Act of 1993, the court concluded that summary judgment

was appropriate in view of Smith's failure to plead or present evidence that he had a property interest in employment as the police chief for the City of Elkins. For that reason, the circuit court concluded that Mayor Brt was entitled to qualified immunity.

Smith now appeals from the circuit court's summary-judgment order. On appeal, Smith contends that (1) the trial court erred in granting summary judgment on the ground that Smith failed to demonstrate a violation of his right to freedom of expression under the Arkansas Constitution and (2) that he has alleged sufficient facts to show that the mayor impermissibly infringed on his liberty interest when Mayor Brt publicly stated that he was fired for drinking.

We assumed this case as it involves the interpretation of the Arkansas Constitution. Ark. Sup. Ct. R. 1-2(a)(1) (2005). The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Dodson v. Taylor*, 346 Ark. 443, 57 S.W.3d 710 (2001). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

Before we reach the substance of Smith's constitutional claims, we must first determine whether Mayor Brt is entitled to qualified immunity. *Rainey v. Hartness*, 339 Ark. 293, 5 S.W.3d 410 (1999). The circuit court concluded that the mayor was entitled to qualified immunity pursuant to Ark. Code Ann. § 19-10-305 (Supp. 2003), which provides qualified immunity for state employees and government officers. Mayor Brt, however, was a municipal employee. Thus, the question is whether Mayor Brt is entitled to qualified immunity under Ark. Code Ann. § 21-9-301 (Repl. 2004), which states in pertinent part:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special im-

provement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

(b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

Ark. Code Ann. § 21-9-301 (Repl. 2004). The determination of whether an official is entitled to claim immunity from suit is purely a question of law. *Helena-West Helena Sch. Dist. v. Monday*, 361 Ark. 82, 204 S.W.3d 514 (2005).

As stated earlier, Smith sued Mayor Brt in his official capacity and his individual capacity. A suit against the city's official in his or her official capacity is not a suit against that person, but rather a suit against that official's office. *See Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002). Even where the city is not named as a defendant, if a judgment for the plaintiff will operate to control the action of the city or subject it to liability, we treat the suit as one against the city. *Id.* Smith also asserts that Mayor Brt is personally liable. Under Ark. Code Ann. § 21-9-301, the City and its employees enjoy immunity from liability and from suits for damages except to the extent that the City is covered by liability insurance, or acts as a self insured for certain amounts as provided by statute. *Helena-West Helena Sch. Dist. v. Monday, supra; Carlew v. Wright*, 356 Ark. 208, 148 S.W.3d 237 (2004); *Spears v. City of Fordyce*, 351 Ark. 305, 92 S.W.3d 38 (2002). We have consistently held that section 21-9-301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts. *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). *See also West Memphis Sch. Dist. v. Circuit Court of Crittenden County*, 316 Ark. 290, 871 S.W.2d 368 (1994).

Our interpretation of section 21-9-301 must begin with the analysis this court has used in interpreting the counterpart qualified-immunity statute that applies to state employees, codified at Ark. Code Ann. § 19-10-305. Section 19-10-305 provides state employees with qualified immunity from civil liability for non-malicious acts occurring within the course of their employment. *See Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986). In interpreting section 19-10-305, we have traditionally been guided by the analysis adopted by the Supreme Court for

qualified-immunity claims in federal civil-rights actions. *Fegans v. Norris,* 351 Ark. 200, 89 S.W.3d 919 (2002); *Rainey v. Hartness, supra.* Under that analysis, a motion for summary judgment based upon qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established, and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. *Fegans v. Norris, supra* (citing *Baldridge v. Cordes,* 350 Ark. 114, 120-21, 85 S.W.3d 511, 514-15 (2002)). An official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. *Id.* (citing *Harlow v. Fitzgerald,* 457 U.S. 800 (1982)). The objective reasonable-person standard utilized in qualified-immunity analysis is a legal inquiry. *Baldridge v. Cordes, supra.*

The inquiry outlined above is a restatement of the standard used by this court to evaluate motions for summary judgment on the ground of qualified immunity. *See Baldridge v. Cordes, supra* (citing *Pace v. City of Des Moines,* 201 F.3d 1050 (8th Cir. 2000)). The Eighth Circuit Court of Appeals has emphasized, however, that such a restatement of the standard is incomplete: "Courts deciding questions of qualified immunity must also recognize that 'whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law.' " *Pace v. City of Des Moines,* 201 F.3d at 1056 (citing *Lambert v. City of Dumas,* 187 F.3d 931, 935 (1999)).

In applying the analysis adopted by this court in *Fegans v. Norris, supra,* to this case, we have no doubt that Smith has alleged a violation of a clearly established constitutional right — the right to freedom of speech under the Arkansas Constitution, Ark. Const. art. 2, § 6. Smith has failed, however, to raise a genuine issue of fact as to whether the mayor would have known that his termination of Smith's employment as police chief violated that clearly established right. The pleadings, depositions, and exhibits reflect that the mayor terminated Smith's employment upon discovering that reports regarding several vehicular break-ins and thefts in a local neighborhood had not been documented. Moreover, the incident upon which Smith's constitutional claim is based occurred fifteen days prior to the termination. Under these circumstances, Mayor Brt could not have reasonably known that his termination of Smith's employment as police chief would violate Smith's constitutional right to free speech. Accordingly,

because Smith has not raised a genuine issue of fact as to whether Mayor Brt would have known that the dismissal violated Smith's clearly established constitutional right, we hold that Mayor Brt is entitled to qualified immunity under Ark. Code Ann. § 21-9-301.

Because we affirm the circuit court's grant of summary judgment on the basis of qualified immunity, we need not reach the other issues raised on appeal.

Affirmed.